# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ENTERTAINMENT ONE UK LTD., | CASE NO.: 1:20-CV-06426 |
| PLAINTIFF, | |
| V. | JUDGE ROBERT M. DOW, JR. |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | MAGISTRATE JUDGE JEFFERY T. GILBERT |
| DEFENDANTS. | **FILED UNDER SEAL** |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Pursuant to this Court's Order [42], Plaintiff, Entertainment One UK Ltd., ("eOne" or "Plaintiff"), by and through their attorneys, hereby submits the following response in opposition to Defendant Allen Vision's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5) and 20(a)(2) (the "Motion"). [36].

## INTRODUCTION AND BACKGROUND

Plaintiff filed this action on October 29, 2020 against operators of foreign-based Internet stores for Trademark Infringement and Counterfeiting (15 U.S.C. § 1114) (Count I); False Designation of Origin, Passing Off, & Unfair Competition (15 U.S.C. § 1125(a)/Lanham Act § 43(a)) (Count II); Violation of Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510, *et seq.*) (Count III); and Copyright Infringement (17 U.S.C. § 501(a)) (Count IV). [1]. Among the named Defendants is the operator of the Amazon Internet store named Allen Vision ("Defendant") identified as the Seller Alias listed on line 14 of Schedule A. The lawsuit is based on Defendant's selling, offering for sale, and/or advertising products using counterfeit versions of eOne's federally registered Peppa Pig Trademarks

1

and Peppa Pig Copyrights[1] (collectively, the "Infringing Peppa Pig Products") to Illinois residents

through its fully interactive, commercial Internet store Allen Vision ("Defendant Internet Store"), for

example:



| Defendant's Image(s) | | Plaintiff's Intellectual Property | |
|---|---|---|---|
| | | Copyright Reg. VA 1-329-059 | TM Reg. No. 4,783,931 |

On November 10, 2020, this Court granted Plaintiff's *Ex Parte* Motion for Entry of a

Temporary Restraining Order (the "TRO") [17], which was subsequently converted into a Preliminary

Injunction on December 7, 2020. [27]. The Court also granted Plaintiff's Motion for Electronic Service

of Process under Fed. R. Civ. P. 4(f)(3) ("Rule 4(f)(3)"). [17] at ¶ 10-11. Specifically, the Court ordered

Plaintiff to serve Defendants by electronically publishing a link to the Amended Complaint and other

relevant documents on a website and by sending an e-mail to the e-mail address provided for

Defendants that includes a link to said website. *Id*.

---

[1] "Peppa Pig Trademarks" and "Peppa Pig Copyrights" are defined in paragraph 2 of the Amended Complaint [6].

Pursuant to this Court's Order, Plaintiff served the TRO on Amazon to obtain the e-mail addresses provided and used by Defendants to register their Amazon accounts (the "Service E- mail Addresses"), along with any identifiable contact information for the Defendants, including physical addresses. See Declaration of Alison K. Carter ("Carter Declaration") at ¶ 4. Plaintiff served Defendants at the Service E-mail Addresses on December 31, 2020 [28]; Carter Declaration at ¶ 5.

Defendant filed the Motion arguing lack of personal jurisdiction, improper service of process, and improper joinder. [36]. However, this Court has previously found that Plaintiff has properly established personal jurisdiction over Defendant. [17; 27]. Defendant does not dispute that the Court found electronic service of process to be proper, nor that it received the Amended Complaint, Summons, TRO, and Preliminary Injunction by e-mail in accordance with the TRO. Additionally, while joinder in this instance is proper, misjoinder is not grounds for dismissal. Accordingly, and for the reasons stated herein, Defendant's Motion should be denied.

## ARGUMENT

I.     **PERSONAL JURISDICTION IS PROPER SINCE DEFENDANT TARGETED AND REACHED OUT TO DO BUSINESS WITH ILLINOIS AND UNITED STATES RESIDENTS.**

### 1.     Legal Standard for Personal Jurisdiction

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

In *Hemi Group*, the Seventh Circuit found that it had personal jurisdiction over defendants because they operated a nationwide business model where they intentionally created and operated several commercial, interactive websites to offer products for sale and allow online orders from Illinois residents. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757-58 (7th Cir. 2009). *Hemi* did not single

3

out Illinois and stated that it would ship to any state in the country except New York. *Id*. The "only specific sales to an Illinois resident that Illinois identified in its complaint were instigated by a special senior agent of the Illinois Department of Revenue", *i.e.,* an investigator for the plaintiff. *Id*. at 755. Based on these contacts, the Seventh Circuit found that personal jurisdiction was proper, stating:

> Hemi held itself out as open to do business with every state (including Illinois) except New York. After the customers made their purchases online, Hemi shipped the cigarettes to their various destinations. It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Illinois.

*Id*. at 758. As such, personal jurisdiction is proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Id*.

Following the Seventh Circuit's decision in Hemi Group, Illinois courts regularly exercise personal jurisdiction over China based Internet Stores based on a single offer for sale to Illinois residents. See, e.g., *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d 897, 909 (N.D. Ill. 2015) ("defendants' offers to sell counterfeit Monster Energy Products on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction"); *Conair Corp., et al. v. Chen Xin, et al.*, No. 16-cv-9693 (N.D. Ill. Mar. 22, 2017) (Docket Entry no. 69) (same); *Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (same).

### 2. Defendant's Intentional Actions Targeted Illinois, so Defendant Purposefully Availed Itself of Jurisdiction in Illinois.

As was the case in *Hemi Group*, Defendant "stood ready and willing to do business with Illinois residents" by creating and operating an Internet store through which Infringing Peppa Pig Products could be, and were, purchased. *Hemi Grp.*, 622 F.3d at 758; *Monster Energy Co.*, 136 F. Supp. at 904. Specifically, Defendant operates an Internet store on Amazon.com, where it offers Counterfeit

4

Products for sale to Illinois residents. Defendant admits in its Declaration that it sold and shipped 75 products into the State of Illinois. Declaration of Xiang Li [36-2] at ¶ 21. Additionally, Defendant operates numerous other Internet stores, which also offer for sale Infringing Peppa Pig Products into this Judicial District. Carter Declaration at ¶ 7. Defendant's intentional and purposeful contacts with Illinois residents subject it to personal jurisdiction in Illinois.

Defendant does not mention or attempt to distinguish the Seventh Circuit's decision in *Hemi Group* even though it is controlling law and despite its factual similarities to this case. Likewise, Courts have expressly rejected Defendant's argument that it "has not directed any activities at residents of Illinois." Defendant "aimed [its] alleged tortious products to residents in all fifty states and 'made [its] services available to anyone by way of [its] website[s],'" and "[c]haracterizing the sales as unilateral is misleading . . . because it ignores several of [Defendant's] own actions that led up to and followed the sales." *Valtech, LLC v. 18th Ave. Toys Ltd.,* No. 14 C 134, 2015 U.S. Dist. LEXIS 17138, at *12 (N.D. Ill. Feb. 12, 2015). *See also Hemi Grp.*, 622 F.3d at 758; *Ty, Inc. v. Baby Me, Inc.*, 2001 U.S. Dist. LEXIS 5761, at *14 (N.D. Ill. Apr. 20, 2001).

For the same reasons, Defendant is also subject to jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) provides for personal jurisdiction through nationwide service of process over any defendant provided that: (1) the plaintiff's claims are based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction is consistent with the laws of the United States; and (4) the exercise of jurisdiction is consistent with the Constitution. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Since Defendant intentionally and knowingly offered for sale, sold, and shipped products to United States residents, personal jurisdiction is also proper under Rule 4(k)(2). *See Plixer Int'l v. Scrutinizer GmbH*, 905 F.3d 1, 5 (1st Cir. 2018).

Finally, fair play means that off-shore Internet Stores that decide to offer for sale and sell products to consumers in the United States, including Illinois, must come to the United States and stand accountable for conduct relating to such sales. *Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *13 (N.D. Ill. Nov. 17, 2015). Defendant "certainly should not be surprised by the jurisdictional consequences of [its] actions" given that it had sufficient resources to purposefully avail itself of the Illinois market. *Id.* at *14 (quoting *Hemi Grp., LLC*, 622 F.3d at 758). As such, Defendant should have reasonably foreseen being subjected to jurisdiction in Illinois.

## II. DEFENDANT WAS PROPERLY SERVED ELECTRONICALLY UNDER FED. R. CIV. P. 4(F)(3) PURSUANT TO THIS COURT'S ORDER.

Defendant was properly served pursuant to Fed. R. Civ. P. 4(f)(3) and this Court's Order [17] on December 31, 2020; see also Carter Declaration at ¶ 5. Notably, the Defendant does not dispute that he received the Amended Complaint, Summons, TRO, and Preliminary Injunction, by e-mail. Thus, service was proper pursuant to the TRO Order [17].

Defendant does not address this Court's Order[2] [17] or the authority cited in Plaintiff's Memorandum in Support of its Motion for Electronic Service of Process Pursuant to Fed. R. Civ. P. 4(f)(3) [13]. Rather, Defendant argues that, under the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"), service of process on a China-based individual or entity must be by way of the Chinese Central Authority. [36] at pp. 7-8. This would require that the Chinese Central Authority serve

---

[2] Defendant's Motion amounts to an improper attempt to seek reconsideration of this Court's Order [17]. Defendant's Motion does not address the circumstances under which reconsideration is appropriate, namely "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Defendant cannot sidestep the reconsideration process, which is "to be granted only in such extraordinary circumstances … Indeed, the court's orders are not mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *United States Securities and Exch. Comm'n v. National Presto Indus., Inc.*, 2004 WL 1093390, at *2 (N.D. Ill. Apr. 28, 2004). As such, Defendant's motion does not comport with the Federal Rules of Civil Procedure.

documents on the physical address of Defendant, a process that takes 1-2 years.[3] Neither Fed. R. Civ. P. 4 nor any other rule requires that a party first attempt service through the Hague Convention and it is not reasonable for Plaintiff to wait months or years for its trademark and copyright infringement claims to be addressed. Finally, service via email and electronic publication is not prohibited by international agreement (or Chinese law) and comports with constitutional notions of due process. See Declaration of Ann Marie Sullivan ("Sullivan Declaration") at ¶ 8.

### 3. Legal authority regarding service of process.

Rule 4(f) of the Federal Rules of Civil Procedure ("Rule 4") governs international service of process on foreign individuals. Service under Fed. R. Civ. P. 4(f)(3) "must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text." *FTC v. Repair All PC, LLC*, 2017 U.S. Dist. LEXIS 83173, at *8 (N.D. Ohio May 31, 2017). Rule 4(f)(3) empowers the Court with flexibility and discretion to fit the manner of service utilized to the facts and circumstances of the particular case. *Id.*

Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3), and the Hague Convention does not displace Rule 4(f)(3). *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) (defendant's argument "misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3)."); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-1015 (9th Cir. 2002). Additionally, Rule 4(f)(3) "is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly

---

[3] The standard turnaround time for service in accordance with the Hague Convention in China is now between 1 and 2 years. *See Sulzer Mixpac AG v. Medenstar Indus. Co.,* 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (noting that the plaintiff had submitted materials to Chinese Central Authority eight months prior, "however, plaintiff has no indication on when service might be effectuated").

Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Id.* at 1015. As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014.

Since "[the Supreme Court] has not provided clear guidance as to how the requirements of the Hague Convention interact with a court's authority to order alternative service under Rule 4(f)(3)," many courts "have reasoned that alternative service may be ordered pursuant to Rule 4(f)(3) as long as the alternative method of service is not expressly prohibited by the Convention or objected to by the receiving state." *Richmond Techs., Inc. v. Aumtech Bus. Solutions, 2011 U.S. Dist. LEXIS 71269,* at *40 (N.D. Cal. July 1, 2011). Numerous Courts have authorized alternative service pursuant to Fed. R. Civ. P. 4(f)(3) even when the defendant resides in a country that is a signatory to the Hague Convention, including for China-based defendants. See *Id.* at *40-41; see also *MCM Holding AG, et al. v. Dequn Zhao, et al*., No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018) (authorizing email service on China-based defendant pursuant to Fed. R. Civ. P. 4(f)(3)).

Moreover, the Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Rio Props., Inc.*, 284 F.3d at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.* Courts across the United States, including in this District, have held that service of process by e-mail and electronic publication on China-based defendants pursuant to Rule 4(f)(3) is appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (S.D.N.Y. 2015).

**4.      Service via Email and Electronic Publication is Not Prohibited by The Hague Convention, and China has Not Objected to Electronic Service of Process.**

Courts have agreed that service by email is not prohibited by the Hague Convention, including for China-based defendants. *Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S. Dist. LEXIS 97241, at *5 (N.D. Ill. Dec. 1, 2008) ("[t]he Hague Convention does not prohibit service by e-mail or facsimile"); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. at 331- 32 (granting motion to serve Chinese defendant by email); *Nanya Tech. Corp. v. Fujitsu, Ltd.*, 2007 U.S. Dist. LEXIS 5754, at *7 (D. Guam Jan. 25, 2007). Further, limiting alternative service methods to only those explicitly authorized by China would necessarily render Fed. R. Civ. P. 4(f)(3) superfluous and redundant of Fed. R. Civ. P. 4(f)(1).

China has not objected to service by email and electronic publication. To the contrary, China explicitly authorizes service by email in certain situations and service by public announcement "if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law." *See Chanel, Inc.*, 2010 U.S. Dist. LEXIS 50745, at *7. China also explicitly authorizes "[s]ervice by facsimile, e-mail and any other means through which the receipt of the document may be acknowledged" on defendants located outside of China. See Sullivan Declaration, Exhibit 4. Reciprocity dictates that if U.S. residents can be served via email by a Chinese court, the reverse is also true.

While China has objected to service by postal mail, courts have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email. *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (collecting cases holding that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10). "China's objection to service by postal mail does not cover service by email, and these forms of communications

differ in relevant respects. Email communications may be more reliable than long-distance postal communications, and the arrival of an email at its destination address may be more readily tracked." *Id*. at 332. Further, while there may be strict and formal procedures for effectuating service in China, these are of little consequence to this Court's determination. *Nanya Tech. Corp*., 2007 U.S. Dist. LEXIS 5724, at \*14 (the Court should not consider the receiving country's laws of service when evaluating whether service pursuant to Fed. R. Civ. P. 4(f)(3) was proper). Accordingly, service of process by electronic publication and email was appropriately ordered by this Court and effectuated under Fed. R. Civ. P. 4(f)(3) since it is not prohibited by the Hague Convention, and because China has not objected to service of process by electronic publication and email.

### 5. The Hague Convention Does Not Apply Because Defendant's Physical Address Was Unknown.

Article 1 of the Hague Convention states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." The Defendant does not dispute that service under the Hague is not required when a defendant's address is unknown pursuant to Article 1. In an attempt to avoid the implications of Article 1, Defendant alleges that "Allen Vision's physical address was expressly identified in its Amazon storefront seller information section on Amazon.com." [36] at ¶ 9. However, no physical address was provided on the infringing product listing and one was not able to be found by the Plaintiff when it conducted discovery. Carter Declaration at ¶ 3. It appears that Defendant has since added his physical address onto his Amazon website. Plaintiff included screenshot evidence of Defendant's infringement, including a screenshot of his storefront page. [See relevant excerpt from the Varley Declaration, submitted hereto as Exhibit A]. Noticeably absent in Plaintiff's screenshot of his storefront page, however, are his physical address and name. *Id*. Defendant's later enhancement of his information section on his storefront page has no bearing on the facts at hand.

Additionally, Plaintiff subpoenaed Amazon to obtain contact information for the Defendant. In its response to the subpoena, Amazon was unable to provide a physical address for the Defendant. Carter Declaration at ¶ 4. This is notable, because Amazon generally provides physical addresses for Defendants when that information is available to them. *Id*. Because of this, it was reasonable for Plaintiff to proceed with the belief that Defendant's physical address was unknown which distinguishes this case from *Luxottica* where the Defendants' physical addresses were known prior to service. *See Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019). As such, the Hague Service Convention is not applicable, and it was proper for Plaintiff to serve the Defendant electronically.

### 6. E-mail Service Pursuant to Rule 4(f)(3) was Proper Even if Defendant's Physical Address Was Purportedly Available.

As established above, Rule 4(f)(3) simply states that service can be effectuated "by any means not prohibited by international agreement." Rule 4(f)(3) does not mention any requirement regarding attempts to identify, verify or serve a defendant at a purported physical address prior to requesting alternative service. See *Romag Fasteners, Inc.*, 140 S. Ct. at 1495 ("Nor does this Court usually read into statutes words that aren't there"). Rather, "Rule 4(f)(3) provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." *Strabala*, 318 F.R.D. at 100.

Court-directed electronic service pursuant to Rule 4(f)(3) is particularly appropriate in this case where "there is a need for speed that cannot be met by following the Hague Convention methods…" because of the injunctive relief sought by Plaintiff. *Strabala*, 318 F.R.D. at 114 citing 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.). Article 15 of the Hague Convention provides that alternate methods may be used if a Central Authority does not respond within six months. *Id.* at 100. Even if a purported address is real and Defendants are available for service at those addresses, it is nearly certain that the

11

Chinese Central Authority will exceed six months in its attempt to effectuate service. For example, in *Luxottica Group S.p.A., et al. v. Xiong Hua Ping, et al*., No. 18-cv-02188, the plaintiffs' request for service was pending with the Chinese Central Authority for well over six months. See also *Victaulic Co. v. Allied Rubber & Gasket Co*., 2020 U.S. Dist. LEXIS 82150, at *3 (S.D. Cal. May 8, 2020) ("… the Ministry of Justice in China noted that service is 'time-consuming and not efficient' and confirmed that it often takes more than two years to complete. Moreover, the current global COVID-19 pandemic has likely complicated service efforts in China and will undoubtably result in additional service delays in the future"). As such, service by electronic means is proper, even if physical addresses for Defendants are purportedly available.

### 7.    Service via E-mail Comports with Constitutional Notions of Due Process.

This Court also correctly found that service via e-mail comports with constitutional notions of due process, because it was reasonably calculated, under all of the circumstances, to apprise Defendants of the pendency of this action and afford Defendants an opportunity to present objections. See *Maclean-Fogg*, 2008 U.S. Dist. LEXIS 97241, at *5. Courts have also held that communications to e-mail addresses listed on a defendant's website comport with due process: "[w]hile email communications may also go astray or fail to come to the relevant individuals' attention, the Court finds that in this case, service to the email address listed on defendant's website is 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Sulzer Mixpac AG,* 312 F.R.D. at 332.

Defendant has actual notice of this Case already. Defendant's Motion fails to explain why service by e-mail unfairly prejudices him or violates due process. Service via the Chinese Central Authority would most definitely make this Case sit stagnant for months, if not years. In contrast, electronic publication and e-mail have proved to be reliable mechanisms for quickly providing notice

12

to ecommerce store operators in similar cases. *See Maclean-Fogg Co.*, *Sulzer Mixpac AG.*

### III. JOINDER OF ALL DEFENDANTS IS PROPER AND IN THE BEST INTERESTS OF JUSTICE.

Defendant improperly asserts that he should be dismissed from the Case due to improper joinder. Rule 21 points out that misjoinder of parties is not a ground for dismissing an action. Fed. R. Civ. P. 21. Additionally, this Court, by entry of the TRO on November 11, 2020, effectively held that joinder of all Defendants, including Allen Vision, is proper for the case at bar. [17].

"Persons…may be joined in one action as defendants if: (A) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The pertinent inquiry is whether the claim arises out of the same transaction or occurrence, and not whether the claims are from the same transaction or occurrence. First, Plaintiff's claims arise from the same respective facts and factual backgrounds: the Defendants' counterfeiting of the Peppa Pig trademarks and copyrights; the means by which Defendant traffics in these counterfeit products through the Internet and ecommerce platforms; the products Defendant is counterfeiting; Defendants' unauthorized use of Plaintiff's trademarks and copyrights; Defendants' intent to defraud and mislead consumers, by trading upon the goodwill of the Peppa Pig brand; as well as a number of other commonalities. Secondly, Plaintiff's claims, including the nature of Plaintiff's claims, arise from the same counterfeiting by Defendants. Third, Plaintiff's claims revolve around the same aggregate of core facts – the harm Defendants' have and continue to cause; the relief sought by Plaintiff to remedy this harm; and the damage from which Plaintiff continues to irreparably suffer, due to the identical circumstances Defendants have and continue to create. Fourth, the law involved is identical for each defendant, in each claim. Finally, the relief sought by Plaintiff, and the legal basis for recovery, is the same for each of the Defendants.

13

Furthermore, Plaintiffs face a "swarm of attacks" on its trademark rights, and "filing individual causes of action against each counterfeiter ignores the form of harm" that Plaintiffs face. *Bose Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 334 F.R.D. 511, 517 (N.D. Ill. 2020). Joinder is proper because Fed. R. Civ. P. 20's inclusion of the term "occurrence" allows a plaintiff to join in a single case the defendants who participate in such unlawful occurrences. *Id*. *See also Oakley, Inc. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A",* No. 1:20-cv-05972 (N.D. Ill. Nov. 9, 2020) (unpublished) (Docket No. 27) ("Plaintiff has sufficiently demonstrated that [the asserted claims] arise out of the same occurrence or series of occurrences"). Thus, Plaintiff satisfies the logical relationship of the Federal Rules of Civil Procedure for determining if claims arise from the same transaction, occurrence, or series of transactions or occurrences.

Plaintiff also satisfies the second prong of Fed. R. Civ. P. 20(a)(2), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." In this case, each of the Defendants is alleged to be knowingly and willfully selling, offering for sale, distributing, and/or advertising products using counterfeit versions of the eOne Trademarks and Copyrights. In addition, the methods Plaintiff will use to investigate, uncover, and collect evidence about any infringing activity will be the same or similar for each Defendant. While each Defendant may later present different factual evidence to support individual legal defenses, prospective factual distinctions do not defeat the commonality in facts and legal claims that support joinder under Fed. R. Civ. P. 20(a)(2)(B) at this stage in the litigation. See *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 251–52 (N.D. Ill. 2011) (Castillo, J.).

In applying Rule 20, the Court should also "look to the policy and law that have developed around the operation of Rule 20. The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Mosley v. General Motors*

*Corp.*, 497 F.2d 1330 (8th Cir. 1974). Above all, the Seventh Circuit has noted that the purpose of a liberal Rule 20(a) joinder requirement "is to enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). Cases like the present case are one of the few effective mechanisms for stopping and deterring online counterfeiting. Plaintiff would be severely prejudiced if it was required to file separate lawsuits simply because Defendants registered a particular Internet Store using a different Seller Alias. *Shambour v. Carver County*, 2014 U.S. Dist. LEXIS 110267, at *17 (D. Minn. Aug. 11, 2014) ("In the matter at hand, joinder is proper because the alleged acts similarly support a larger allegation of a systemic problem and the Court is persuaded that keeping [Plaintiff's] claims together is not only permissible but preferable."). For these reasons, this Court should find that joinder of all Defendants, this Defendant included, is proper.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the Complaint should be denied.

Dated: February 5, 2021                                        Respectfully submitted,

*/s/ Ann Marie Sullivan*
Ann Marie Sullivan
Alison Carter
AM Sullivan Law, LLC
1440 W. Taylor St., Suite 515
Chicago, Illinois 60607
Telephone: 224-258-9378
E-mail: ams@amsullivanlaw.com

***ATTORNEYS FOR PLAINTIFF***